**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

MARY MONTECALVO,

    Plaintiff,

v.

UNION GENERAL HOSPITAL, INC.,

    Defendant.

CIVIL ACTION NO.
2:11-CV-00004-RWS

## ORDER

This case comes before the Court on Plaintiff's Motion to Strike Defendant's Disclosure of Expert Chebuhar, M.D. ("Pl.'s MTS") [47], Plaintiff's Motion for Leave to Amend Complaint ("Pl.'s MLAC")[45], and Defendant's Motion for Partial Summary Judgment ("Def.'s MPSJ") [55]. After reviewing the record, the Court enters the following Order.

## Background

Mary Montecalvo ("Plaintiff") presented to Union General Hospital ("Defendant") for a scheduled colonoscopy on July 21, 2009.[1] Plaintiff alleges

---

[1] Unless otherwise indicated, the facts below are not in dispute and are taken from Defendant's Statement of Material Facts As To Which There Exists No Genuine

AO 72A
(Rev.8/82)

that she fell on Defendant's premises on July 21, 2009 (following her colonoscopy) while under the care of Andrea Green, L.P.N., Defendant's employee, and that the fall caused her to suffer a fractured pelvis. (Plaintiff's Statement of Additional Facts Which Are Material and Present a Genuine Issue for Trial ("Pl.'s St. Add. Facts"), Dkt. [62-3] ¶ 1.) Plaintiff was discharged from Union General around 9:55 a.m. on July 21, 2009. Plaintiff returned to Union General that same afternoon and was diagnosed with a fractured pelvis. She was admitted for treatment and discharged on July 31, 2009. For about the next five weeks, Plaintiff received nursing care and physical therapy. Following therapy, Plaintiff used assistive devices to ambulate.

Plaintiff maintains that before July 21, 2009, she lived an active and independent life caring for her pets and her yard. (Pl.'s St. Add. Facts, Dkt. [62-3] ¶ 3.) For several months after her fall, however, her physical activity decreased substantially due to pain and difficulty in ambulation. Id. ¶ 4. Plaintiff alleges that her reliance on assistive devices decreased her overall ability to ambulate and predisposed her to an osteoporotic progression. Id. ¶ 5-6.

---

Issue for Trial [55-4].

2

In October 2009, Plaintiff moved to Denton, Texas. On December 10, 2009, January 17, 2010, and January 18, 2010, Plaintiff presented to the emergency room at Presbyterian Hospital in Denton for thoracic pain. Plaintiff was seen by Dr. Michael Catino on January 18, 2010. Dr. Catino diagnosed Plaintiff with a T9 compression fracture in her spine. To treat the fracture, Dr. Catino performed a kyphoplasty, during which medical cement was injected into Plaintiff's T9 vertebrae. Dr. Catino described Plaintiff's thoracic pain as atraumatic (i.e., nontraumatic) in nature. Id. ¶ 10. According to Plaintiff, her primary treating physician, Dr. Frank Wood, did not treat her for thoracic pain prior to her alleged 2009 fall on Defendant's premises. Id. ¶ 11.

## Discussion

I. **Defendant's Argument to Strike Plaintiff's Causation Witness**[2]

Defendant argues that the testimony of Michael Catino, M.D. must be stricken for Plaintiff's failure to disclose Dr. Catino as an expert witness under Federal Rule of Civil Procedure 26(a)(2)(A) ("Rule 26(a)(2)(A)") and Local

---

[2] Defendant argues in its Motion for Partial Summary Judgment [55] that Dr. Catino's testimony should be stricken. Although Defendant treats its motion to strike as a "procedural" argument for partial summary judgment, we address the issue separately here.

3

Rule 26.2(c). (Brief in Support of Defendant's Motion for Partial Summary Judgment ("Def.'s MPSJ Br."), Dkt. [55-1] at 8-11.) Plaintiff responds that Dr. Catino's testimony was "lay testimony" and therefore not subject to Rule 26(a)(2)(A); or alternatively, if disclosure under Rule 26(a)(2)(A) was required, the failure to disclose was harmless. (Plaintiff's Response to Defendant's Motion for Partial Summary Judgment ("Pl.'s Resp. to Def.'s MPSJ"), Dkt. [62] at 4-9.) The Court finds that Dr. Catino should have been disclosed as an expert witness under Rule 26(a)(2)(A), but Plaintiff's failure to disclose was harmless. Therefore, Dr. Catino's testimony is admissible.

    Rule 26(a)(2)(A) requires a party to disclose the identity of any witness who may present evidence at trial under Federal Rule of Evidence 702, 703, or 705. Federal Rule of Evidence 702, the relevant rule here, governs witnesses qualified as experts who testify in the form of opinion based on "scientific, technical, or other specialized knowledge." Treating physicians like Dr. Catino may testify as lay witnesses (and avoid Rule 26(a)(2)(A) disclosure requirements for experts) "if the testimony is an account of their observations during the course of treatment or if it is offered for the purpose of explaining the physician's decision-making process or the treatment provided." Eberhart v.

4

Novartis Pharm. Corp., 2011 WL 5289372, at *10 (N.D. Ga. Oct. 31, 2011). However, if the treating physician purports to "provide explanations of scientific and technical information not grounded in their own observations and technical experience," he becomes an expert witness under Federal Rule of Evidence 702 and subject to Rule 26(a)(2)(A) disclosure.

Here, Dr. Catino offered opinions on the causation of Plaintiff's T9 compression fracture; specifically, he opined on the relationship between the pelvic fracture in July 2009 and the later T9 fracture. Those opinions were not based on his own observations or offered for purposes of explaining the treatment he provided. Further, his opinions on causation were only hypotheses, which is "quintessential expert testimony." Id. Therefore, Dr. Catino was not testifying as a lay witness and should have been disclosed as an expert under Rule 26(a)(2)(A).

Under Federal Rule of Civil Procedure 37(c)(1) ("Rule 37(c)(1)"), if a party fails to properly disclose a witness under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is*

5

*harmless.*" (Emphasis added.) The Court agrees with Plaintiff that her failure to disclose Dr. Catino as an expert witness was harmless.

Plaintiff identified Dr. Catino in her initial disclosures as a treating physician with knowledge of Plaintiff's condition. (Initial Disclosures by Mary Montecalvo, Dkt. [10] at Attachments A, C; Plaintiff's Response to Defendant's Continuing Interrogatories and Request for Production of Documents, Dkt. [55-2] ¶ 13.) Additionally, Plaintiff gave notice of Dr. Catino's evidentiary deposition in the Proposed Pretrial Order filed on January 30, 2012. ([38] at 3.) Plaintiff's counsel and Defendant's counsel deposed Dr. Catino on March 9, 2012. Counsel for both sides questioned Dr. Catino on the cause of Plaintiff's T9 compression fracture (See generally Deposition of Michael Catino, M.D., Dkt. [60-1].) In fact, Defendant's counsel indicated he had prepared for the causation line of questioning by reviewing literature on the subject prior to the deposition. Id. at 28. Further, Defendant has identified an expert to rebut Dr. Catino's opinions on causation.[3] (Disclosure of Expert Craig Chebuhar, M.D., Dkt. [44].) Therefore, Plaintiff's failure to identify Dr. Catino as an expert has

---

[3] The Court addresses Plaintiff's motion to strike Defendant's opposing expert witness in the next section.

AO 72A
(Rev.8/82)

not prejudiced Defendant and under Rule 37(c)(1), Dr. Catino's testimony is admissible.

II.     **Plaintiff's Motion to Strike Defendant's Expert Causation Witness**

Plaintiff moves to strike Defendant's disclosure of expert Craig Chebuhar, M.D. because Defendant failed to disclose Dr. Chebuhar prior to close of discovery on December 31, 2011, and Dr. Chebuhar's identification and testimony are outside the scope of this Court's Order [39] reopening and extending discovery for limited purposes until March 19, 2012.[4] (Pl.'s MTS, Dkt. [47].) Defendant argues that Dr. Chebuhar was identified as a causation expert within the discovery period, and even if identification was untimely, the delay was justified and harmless. (Defendant's Response Brief in Opposition to Plaintiff's Motion to Strike Defendant's Disclosure of Expert Craig Chebuhar, M.D. ("Def.'s Resp. to Pl.'s MTS"), Dkt. [53].) The Court agrees with Defendant that late disclosure of Dr. Chebuhar was justified and harmless.

---

[4] The Court's Order reopened discovery for limited purposes: (1) the deposition of Plaintiff's designated expert; (2) identification of a responsive expert by Defendant; (3) providing Defendant's expert report to Plaintiff; and (4) deposition of Defendant's expert. When the Order was entered, Plaintiff's only designated expert was Tania Henne, R.N., who offered opinions regarding standard of care. Dr. Chebuhar's report does not address Ms. Henne's opinions.

7

Defendant deposed Dr. Catino, Plaintiff's causation witness, on March 9, 2012. Defendant suspected that Dr. Catino would testify on causation, but due to Plaintiff's failure to disclose Dr. Catino as an expert witness, was not sure of the nature or content of Dr. Catino's testimony until the date of the deposition. Following the deposition, Defendant promptly identified an opposing causation witness, and disclosed the witness and his expert report on March 19.[5]

Plaintiff argues that Dr. Chebuhar could have been identified prior to the close of discovery because Dr. Chebuhar's opinions concern matters known to Defendant from the early stages of the case. The Court finds this argument unpersuasive. Presumably, Plaintiff knew that *she* would need an expert witness to testify regarding causation in this medical malpractice case,[6] and she

---

[5] Dr. Chebuhar was retained to provide expert testimony in this case. Therefore, unlike Dr. Catino, he was required to provide an expert report under Rule 26(a)(2)(B).

[6] As discussed in more detail below, to establish liability in a medical malpractice case in Georgia, a plaintiff must prove that the defendant's failure to exercise the required standard of care was the proximate cause of the plaintiff's injury. See Copeland v. Houston Cnty. Hosp. Auth., 450 S.E.2d 235, 236 (Ga. Ct. App. 1994). "In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." Zwiren v. Thompson, 578 S.E.2d 862, 865 (Ga. 2003) (internal citations omitted).

8

too failed to identify an expert witness on this issue during discovery (or at any time). Indeed, Defendant's ability to use the testimony of an opposing expert witness is a factor in determining whether Plaintiff's own failure to disclose Dr. Catino as an expert witness was harmless.

The untimely identification of Dr. Chebuhar did not prejudice Plaintiff. Defendant formally disclosed Dr. Chebuhar on March 19, 2012, the last day of the extended discovery period. But Plaintiff was aware of Dr. Chebuhar even before that and was given an opportunity to depose the witness. On March 14, 2012, however, counsel for Plaintiff stated in an email [53-3], "At this time, we do not intend to depose Dr. Chebuhar. We will inform you within a reasonable timeframe if our position changes."

Even though identification of Dr. Chebuhar occurred after the initial discovery period expired and was outside the scope of the Court's Order reopening and extending discovery [39], Defendant's untimely identification of Dr. Chebuhar was justified and harmless. Therefore, under Rule 37(c)(1), Dr. Chebuhar's testimony is admissible.

9

III. **Plaintiff's Motion for Leave to Amend Complaint**

Plaintiff moves for leave to amend her complaint to add a limited claim for attorney fees and expenses under O.C.G.A. § 13-6-11, and a claim for punitive damages under O.C.G.A. § 51-12-5.1. Defendant argues that Plaintiff has given no reasonable justification for delaying her motion until three months after the close of discovery, and because the additional claims raise new issues, granting leave to amend would substantially delay the proceedings. The Court agrees with Defendant.

Federal Rule of Civil Procedure 15(a)(2) says the court should freely give leave to amend when justice so requires. "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). Here, Plaintiff moved for leave to amend three full months after the close of discovery. She seeks to add claims that raise new issues, which were not contemplated by Defendant during discovery and were not raised in the

Proposed Pretrial Order [38] filed on January 30, 2012. Further, Plaintiff has had the information that allegedly supports her additional claims since October 2011, long before the close of discovery. Allowing these additional claims would cause undue delay (i.e., reopening discovery and re-deposing witnesses) or substantial prejudice to Defendant. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 941 (4th Cir. 1995) ("[A] motion to amend may be denied when it has been unduly delayed and when allowing the motion would prejudice the nonmovant"). Therefore, the Court will not allow Plaintiff to amend her complaint at this late stage.

IV. **Defendant's Motion for Partial Summary Judgment**

Plaintiff seeks damages for personal injuries sustained when she fell in July 2009. She also seeks damages for her acute T9 compression fracture that occurred in January 2010. Defendant moves for summary judgment on Plaintiff's claims related to the T9 fracture.

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving

11

party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

12

(11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

    A. *No "increased risk" liability in Georgia*

In support of its motion for partial summary judgment, Defendant argues that Georgia does not recognize a theory of liability premised on the "increased risk" of suffering a future, unrelated injury. (Def.'s MPSJ Br., Dkt. [55-1] at 11-18.) Plaintiff contents, however, that she is not proceeding on such a theory. Instead, she argues, her fall after the colonoscopy procedure was the proximate cause of an actual injury (the T9 fracture). (Plaintiff's Brief in Response to

13

AO 72A
(Rev.8/82)

Defendant's Motion for Partial Summary Judgment ("Pl.'s Resp. Br. to Def.'s MPSJ"), Dkt. [62-1] at 9-11.)

Because Plaintiff represents that she is not relying on an "increased risk" theory of recovery, and because there is evidence in the record supporting her representation to that effect, the Court will not grant partial summary judgment on the grounds that Georgia does not recognize that theory of liability. However, due to Plaintiff's representations to Defendant and this Court, Plaintiff will not be permitted to rely on a theory of increased risk at trial, nor introduce evidence to support such a theory.

### B. *Evidence of Proximate Causation*

Defendant argues that Plaintiff has failed to establish, by expert testimony, that Defendant's negligence was the proximate cause of the T9 compression fracture. (Def.'s MPSJ Br., Dkt. [55-1] at 18-22.) In Georgia, to recover in a medical malpractice action, "a plaintiff must prove three elements: the duty inherent in the doctor-patient relationship; breach of that duty by failure to exercise the required standard of care; and that this failure is the proximate cause of the plaintiff's injury." Copeland v. Houston Cnty. Hosp. Auth., 450 S.E.2d 235, 236 (Ga. Ct. App. 1994). "In order to establish

14

proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." Zwiren v. Thompson, 578 S.E.2d 862, 865 (Ga. 2003). "Instead of speaking in terms of possibilities, the expert's testimony must show as an evidentiary threshold that the expert's opinion regarding causation is based, at the least, on the determination that 'there was a reasonable probability that the negligence caused the injury.'" Id. at 865 (quoting Pilzer v. Jones, 529 S.E.2d 205, 208-09 (Ga. Ct. App. 2000)). An expert's opinion on causation "must be based on reasonable medical probability or reasonable medical certainty." Id. at 867.

During his deposition, Dr. Catino offered his opinion regarding the cause of Plaintiff's T9 fracture. He said:

> Given the fact that she had fallen – and when I look at Ms. Montecalvo's history over the six-month period, the fact that she was quite independent prior to the fall and the fact that her activity was substantially decreased for a prolonged period of time, you know, right up to when she was having complaints of thoracic pain that was atraumatic, she was diagnosed with an acute fracture at T-9 in the absence of any trauma certainly the fact that she's using a quad cane at that point, certainly the fact that she's predisposed to a progression of her underlying osteoporosis due to decreased activity over a prolonged period of time, *I can state with a*

15

> *reasonable degree of medical certainty that there's – that's a very likely etiology for that fracture.* (Emphasis added.)

(Pl.'s Resp. Br. to Def.'s MPSJ, Dkt. [62-1] at 15.) Dr. Catino's opinion goes beyond statements of mere possibility. In fact, he states that Plaintiff's fall and pelvic fracture in 2009, and subsequent related events, "very likely" caused Plaintiff's T9 fracture.

Defendant points to other statements by Dr. Catino admitting that Plaintiff could have suffered a T9 fracture without the fall and pelvic fracture, and that compression fractures can result from a variety of normal activities like bending, lifting, or sneezing. (Def.'s MPSJ Br., Dkt. [55-1] at 20.) However, equivocation by Dr. Catino regarding the cause of the T9 fracture (if indeed that is what these other statements represent) does not undo the portion of his testimony that supports Plaintiff's claim. See Pruette v. Phoebe Putney Mem'l Hosp., 671 S.E.2d 844, 848 (Ga. Ct. App. 2008) ("Even if [the expert] later equivocated on the causation issue during the course of his deposition, such testimony simply created an issue of credibility for the jury to resolve."). Viewing all evidence in favor of Plaintiff, as the Court must do on a motion for summary judgment, Plaintiff's expert does satisfy the minimum evidentiary requirement on causation.

16

Defendant identified an opposing expert witness following Dr. Catino's deposition. In his expert report, Dr. Chebuhar wrote: "It is my opinion that the pelvic fracture of 2009 and the T9 compression fracture of January 2010 were the result of separate injuries and that the pelvic fracture in no way caused or predisposed the patient to suffer a thoracic compression fracture at a later date." (Expert Report, Craig M. Chebuhar MD, Dkt. [44-1] at 1.) This presents a classic case of "dueling experts," which has created a genuine dispute as to a material fact.

Where a plaintiff satisfies minimum evidentiary requirements on causation, as Plaintiff has done here, what amounts to proximate cause "is undeniably a jury question." Zwiren, 578 S.E.2d at 865 (quoting Ontario Sewing Mach. Co. v. Smith, 572 S.E.2d 533, 536 (Ga. 2002)). Therefore, Defendant's motion for partial summary judgment must be denied.

## Conclusion

In accordance with the foregoing, Plaintiff's Motion to Strike Defendant's Disclosure of Expert Craig Chebuhar, M.D. [47] is **DENIED**,

17

AO 72A
(Rev.8/82)

Plaintiff's Motion for Leave to Amend Complaint [45] is **DENIED**, and Defendant's Motion for Partial Summary Judgment [55] is **DENIED.**

Before setting this case down for trial, the Court will require the parties to participate in mediation. Counsel shall confer and advise the Court, within 7 days of the entry of this Order whether they can agree upon a mediator or wish the court to refer the case to a Magistrate Judge of this Court for mediation. If the case is not settled, the Parties shall submit a proposed consolidated pretrial order to the Court within 21 days of the conclusion of mediation.[7]

**SO ORDERED**, this  15th  day of October, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[7]The Parties earlier submitted a proposed consolidate pretrial order [38]. However, a proposed order reflecting the rulings herein is now appropriate.

AO 72A
(Rev.8/82)